UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOWARD HERSHIPS,<br><br>    Plaintiff,<br><br>    v.<br><br>STATE OF CALIFORNIA SUPERIOR COURT,<br><br>    Defendant. | Case No. 20-cv-07208-JD<br><br>**ORDER RE SUMMARY JUDGMENT** |

The Court dismissed all defendants in pro se plaintiff Howard Herships' fourth amended complaint except for the County of Santa Clara and the Santa Clara Superior Court. Dkt. No. 72 (fourth amended complaint (4AC)); Dkt. No. 107 (dismissal order). The Court dismissed all claims against these defendants other than claims under Title II of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* (ADA), and Section 504 of the Rehabilitation Act, 29 U.S.C. § 701 *et seq.* Dkt. No. 107. Herships dismissed the claims against the County with prejudice, Dkt. No. 148, leaving the Superior Court as the sole remaining defendant.

The ADA and Rehabilitation Act claims in the 4AC concern a hearing in the Superior Court on January 17, 2020, to revoke Herships' probation on a prior conviction. *See* Dkt. No. 72 ¶¶ 60, 81. Herships alleges that he has a hearing impairment the Superior Court did not adequately accommodate, which affected his ability to participate in the proceeding. *Id*. ¶¶ 18-22, 37. Herships was sentenced to six months in custody at the hearing. *Id*. ¶ 26.

The Superior Court asks for summary judgment in its favor on the ADA and Rehabilitation Act claims. Dkt. No. 127. The parties treat Herships as an individual with a disability and the

Court will do the same, without making a formal finding to that effect. The ADA and Rehabilitation Act provide important protections for people with disabilities, who can be among the most vulnerable members of our communities. Even so, the record here establishes, without genuine dispute, that the January 17, 2020, revocation hearing lasted approximately 10 minutes, and that a courtroom bailiff gave Herships earphones that allowed him to hear most of the discussion, including all of the judge's remarks. There is no evidence indicating that the Superior Court did anything to impede Herships' participation in the hearing or his ability to communicate with his attorney.

Consequently, the Superior Court has established under Federal Rule of Civil Procedure 56 that Herships "does not have enough evidence of an essential element to carry [his] ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Summary judgment is granted in its favor. Herships' cross-motion for summary judgment, Dkt. No. 132, which essentially repeated his opposition to the Superior Court's motion, Dkt. No. 130, is denied.[1]

## DISCUSSION

The legal framework of the ADA and Rehabilitation Act claims is well settled. "There is no significant difference in analysis of the rights and obligations created by the ADA and the Rehabilitation Act," and so these claims are appropriately resolved together. *Zukle v. Regents of Univ. of Cal.*, 166 F.3d 1041, 1045 n.11 (9th Cir. 1999). "Title II of the ADA and § 504 of the [Rehabilitation Act] both prohibit discrimination on the basis of disability." *Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002).

To prove that the Superior Court violated Title II of the ADA, Herships "must show that: (1) he is a qualified individual with a disability; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or

---

[1] The discussion in the order of dismissal, Dkt. No. 107, is incorporated here, and the parties' familiarity with the record is assumed.

2

discrimination was by reason of his disability." *Updike v. Multnomah Cnty.*, 870 F.3d 939, 949 (9th Cir. 2017) (internal quotation omitted). To prove a violation of Section 504 of the Rehabilitation Act, Herships "must show that (1) he is an individual with a disability; (2) he is otherwise qualified to receive the benefit; (3) he was denied the benefits of the program solely by reason of his disability; and (4) the program receives federal financial assistance." *Id.* (internal quotation omitted). "Under both Title II of the ADA and § 504 of the Rehabilitation Act, [Herships] must show that he was excluded from participating in or denied the benefits of a program's services or otherwise discriminated against." *Id.* at 950.

Because Herships requests compensatory damages, *see* Dkt. No. 72 ¶ 73, he must also prove discriminatory intent. *Updike*, 870 F.3d at 950 (internal citation omitted). This means proof of "deliberate indifference," namely proof of "both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that . . . likelihood." *Id.* at 950-51 (internal quotation omitted) (ellipsis in original). "To meet the second prong, the entity's failure to act must be a result of conduct that is more than negligent, and involves an element of deliberateness." *Id.* at 951 (internal quotation omitted).

The facts material to the ADA and Rehabilitation Act claims are not in dispute. As Herships testified in a deposition, he told a bailiff at the start of the January 17, 2020, hearing that he did not have his hearing aids and that "I need some assistive listening devices, so I could communicate to the Court." Dkt. No. 127-1 at 88:3-6; *see also id.* at 102:15-22. The bailiff gave him "a pair of earphones to -- which was the direct feed from the court amplification system." *Id.* at 87:9-14. Herships was able to hear everything the judge said during the hearing but was intermittently missing some words said by the district attorney and his public defender. *Id.* at 91:22-92:21; 196:23-197:10. Herships did not give notice to anyone during the hearing that some of the words were intermittently inaudible. *Id.* at 92:22-25; 93:21-25. He did not tell anyone in the courtroom, other than the bailiff, that he had a hearing disability. *Id.* at 195:2-6. He did not make a written request before the hearing for an accommodation. *Id.* at 206:13-16. Herships testified the "whole hearing only took 10 minutes." *Id.* at 105:16-17; *see also id.* at 96:7-9.

3

The official transcript of proceedings for the hearing indicates that Herships was able to hear most of the discussion. *See* Dkt. No. 127-2, Exh. B. Herships testified in his deposition that the only portions he could not hear are marked as "unintelligible" in the transcript. Dkt. No. 127-1 at 197:25-198:8 ("Q: Aside from where it said 'unintelligible,' the rest of the hearing and the proceeding were audible to you, correct? A: Correct."). The transcript features the substantive comments by the prosecutor, Herships' attorney, and the judge. It is true that "unintelligible" appears at times, but in contexts suggesting a word or two was missing. The transcript provides no evidence that substantial portions of the hearing were unintelligible to Herships.

Overall, the hearing transcript and Herships' own testimony establish beyond dispute that the Superior Court provided earphones that allowed him to hear the revocation proceedings as they unfolded, with just a few instances of words being unintelligible. Consequently, with respect to the January 17, 2020, court proceeding, Herships cannot establish under the ADA and Rehabilitation Act that he was excluded from participating in or denied the benefits of a program's services, or otherwise discriminated against, on the basis of a disability.

Herships did not proffer any evidence that might call this conclusion into genuine dispute and warrant proceeding to trial. Much of Herships' brief simply rehashed complaints of alleged misconduct by judges that the Court dismissed, and repeated comments about a consent decree he does not have standing to enforce. *See* Dkt. No. 107 at 3-5. Herships says the Superior Court "ignored requests for accommodations some 10 times," Dkt. No. 130 at 11, but his deposition testimony and the official hearing transcript establish that he made no requests other than the one to the bailiff that resulted in the provision of the earphones. Herships also says, somewhat inconsistently, that he did not notify anyone during the hearing because "I had no ability to." Dkt. No. 127-1 at 93:1-3. But nothing in the record indicates that Herships was constrained or prevented in any way from speaking up after his initial conversation with the bailiff. So too for Herships' suggestion that he could not communicate with his lawyer. Nothing in the record indicates that the Superior Court acted in a manner that impeded Herships' interactions with his lawyer or his defense during the revocation proceedings.

4

Herships' case citations do not point to a different result. He relies on *Duvall v. County of Kitsap*, 260 F.3d 1124 (9th Cir. 2001), and *Updike*, both of which noted ADA implementing regulations for hearing impaired individuals, which state that "a public entity must 'take appropriate steps to ensure that communications' with disabled persons 'are as effective as communications with others.'" *Updike*, 870 F.3d at 949 (quoting 28 C.F.R. § 35.160(a)); *see also Duvall*, 260 F.3d at 1136. The problem for Herships is that these cases are distinguishable on facts that are a country mile from his situation. In *Updike*, for example, the plaintiff was deaf from birth and communicated through ASL. *Updike*, 870 F.3d at 943. During pretrial custody before a criminal arraignment, the plaintiff made multiple requests for an ASL interpreter and a teletypewriter device so that he could communicate with others, which officers ignored or denied. *Id*. at 943-45. The plaintiff stayed an extra night in jail because his disability had not been accommodated. *Id*. at 951. In *Duvall*, the plaintiff was almost completely deaf and relied on the written word to communicate. *Duvall*, 260 F.3d at 1129-30. In the weeks leading up to a marriage dissolution trial, the plaintiff contacted ADA personnel for the defendant county on many occasions to request videotext services in court, which the United States Department of Justice had advised him to do. *Id*. at 1130-31. On the first day of the hearing, his attorney also asked the court to provide a videotext display as an accommodation. *Id*. at 1131. The judge denied the request. *Id*. As a result, the plaintiff endured several days of trial and hearings in which he could not follow the proceedings, and experienced "exhaustion, headaches, and tinnitus." *Id*. at 1131-32.

Herships' circumstances are dramatically different. He made one request at the start of his hearing for an assistive device, which was promptly accommodated by the bailiff. He did not make any other requests prior to or during the hearing. He could hear most of the discussion during the 10-minute court proceeding. This is not a situation where "[plaintiff] provided sufficient evidence to create a triable issue as to whether [defendants] . . . had notice of his need for the accommodation involved and . . . failed despite repeated requests to take the necessary action." *Updike*, 870 F.3d at 954 (quoting *Duvall*, 260 F.3d at 1140) (brackets and ellipsis in original).

**CONCLUSION**

A judgment in favor of the Superior Court will be entered separately. All pending motions and remaining pretrial and trial dates are vacated.

**IT IS SO ORDERED.**

Dated: May 21, 2025

JAMES DONATO
United States District Judge

6